## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MERMIGAS, individually and on behalf of all those similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, )<br><br>Defendant. ) | Case No. 1:24-cv-11505<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, CHRISTOPHER MERMIGAS ("MERMIGAS or Plaintiff"), individually on behalf of himself and on behalf of all those similarly situated, by and through his counsel, Keith L. Gibson and Bogdan Enica, brings this action against the Higher Education Loan Authority of the State of Missouri ("MOHELA" or "Defendant") and alleges the following based upon information, belief, and the investigation of its counsel:

## INTRODUCTION

1.     MOHELA is currently the largest servicing company for student loan debt for American consumers.

2.     Since 2011, the U.S. Department of Education ("USED") has paid MOHELA over $1.1 billion dollars to help borrowers manage their student loan options.

3.     MOHELA has consistently failed at its responsibilities to the borrowers' detriment.

4.     MOHELA misleads and misinforms borrowers, fails to process applications for income-driven repayment ("IDR") plans in a timely manner or entirely, fails to provide refunds, miscalculates balances, over-charges borrowers, processes unauthorized debit transactions from

1

borrowers accounts, fails to respond to borrower inquiries, and denies borrowers information to which they are entitled.

5. MOHELA's servicing system is rife with errors, misinformation, and broken promises. In doing so, MOHELA commits common law fraud, negligent misrepresentation, and violates the Illinois Consumer Fraud Act.

6. MOHELA's actions impact thousands or more individuals, their families, and communities - people who are working hard and playing by the rules, but whose financial futures are imperiled by MOHELA's actions.

7. MOHELA's misconduct is more than just incompetence. MOHELA knew the responsibilities it took on as a servicer and willfully disregarded those responsibilities at the expense of student loan borrowers.

8. MOHELA's servicing failures are exacerbated by a scheme it designed to inhibit borrowers' ability to access live customer service representatives and instead divert borrowers to inadequate "self-service" phone and website platforms.

9. This scheme results in long call wait times and poor service, leaving borrowers unable to get basic information about their accounts or correct the problems MOHELA causes.

10. Borrowers who connect with a live customer service representative encounter people whom MOHELA has failed to train or supervise, resulting in the dissemination of inaccurate, unhelpful, and often damaging information.

11. Individually, it is impossible for borrowers to correct account errors, make important decisions to protect their economic well-being, or even confirm basic information about their student loan accounts.

12. MOHELA's failings cause student loan borrowers to suffer from mental and physical distress as well as incur financial hardship through unauthorized debit transactions.

13.     Plaintiff experienced first-hand MOHELA'S incompetence and intention disregard for the rights of its customers.   MOHELA sent Plaintiff and thousands of potential class members incorrect billing statements, made unauthorized changes to borrower's accounts and repayment plans, and made unauthorized debits to Plaintiff and Class Members bank accounts.

14.     Plaintiff now comes to this Court seeking relief from MOHELA's pattern of abuse on behalf of itself, its members, and the thousands of consumers affected by MOHELA's misconduct.

15.     Plaintiff, on behalf of himself and a Class of similarly situated individuals, seeks recovery of damages from Defendant's unfair and deceptive conduct under the Illinois Consumer Fraud Act and negligent misrepresentation.

16.     Plaintiff also requests entry of an Order awarding injunctive relief and declaratory relief requiring cessation of the unfair and deceptive practices described in the Complaint.

## NATURE OF THE ACTION

17.     Plaintiff, Christopher Mermigas, on behalf of himself and all those similarly situated seeks damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendant, for violation of the Illinois Consumer Fraud Act, negligent misrepresentation and common law Unjust Enrichment.

## PARTIES

### Plaintiff Christopher Mermigas

18.     Plaintiff, Christopher Mermigas, is a citizen of Illinois who resides in the County of DuPage, Village of Westmont, State of Illinois.

19.     Plaintiff brings this action on his behalf and on behalf of all other persons similarly situated individuals ("Class Members").

### Defendant MOHELA

20.     Defendant MOHELA is one of the largest student loan servicers in the United States.

21.     MOHELA is headquartered in Missouri. MOHELA currently employs hundreds of individuals across the country who work remotely in other states including Illinois. MOHELA's current staff consists of 1,277 employees and 2,010 subcontractors, who perform customary loan servicing, administrative, and advisory functions.

22.     MOHELA currently, and at all times relevant, serviced loans throughout the United States, including in the State of Illinois.

23.     MOHELA send direct marketing materials to consumers in the State of Illinois, soliciting their loans for servicing by MOHELA.

24.     MOHELA was established in 1981 pursuant to the Missouri Higher Education Loan Authority Act, Title XI, Chapter 173, Section 173.350 to 173.445 of the Missouri Revised Statutes, inclusive, as amended (the "Authorizing Act"), as "a public instrumentality and body corporate" and its exercise of the authority granted it was "deemed to be the performance of an essential public function." Mo. Ann. Stat. § 173.360.

25.     MOHELA's initial purposes was "to assure that all eligible postsecondary education students have access to student loans that are guaranteed or insured, or both, and in order to support the efforts of public colleges and universities to create and fund capital projects, and in order to support the Missouri technology corporation's ability to work with colleges and universities in identifying opportunities for commercializing technologies, transferring technologies, and to develop, recruit, and retain entities engaged in innovative technologies." *Id.*

26.     Under its Authorizing Act, MOHELA can sue and be sued in its own name. *Id.* § 173.385.1(3).

27.     MOHELA's assets are not part of the state of Missouri's revenue and cannot be used

4

for the payment of Missouri's debts. *Id.* §§ 173.386, 173.425. Missouri, in turn, cannot be liable for MOHELA's debts. *Id.* § 173.410. The vast majority of MOHELA's funds are segregated from state funds and controlled exclusively by MOHELA as a self-sustaining and financially independent entity.

28. As of March 31, 2024, MOHELA services more than eight million accounts for borrowers across the country. Since 2011, USED has paid MOHELA over$1.1 billion for the servicing of Department-held loans.

29. In 2023, $295 million of MOHELA's $358.6 million in revenue was "derived from servicing fees for federal loans nationwide."

30. With this major addition to MOHELA's commercial services, MOHELA's current out-of-state loan servicing business, which obligates it to manage loan accounts for millions of student borrowers in Illinois and across the country, now greatly exceeds its statutorily mandated work for Missouri residents.

## JURISDICTION AND VENUE

31. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive or interest or costs; there are more than 100 members in the proposed class; and at least one member of the class is a citizen of a state different from Defendant.

32. This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and do business in Illinois, including in this District.

33. Defendant marketed and serviced student loan borrowers in the State of Illinois, including Plaintiff and Class Members.

34. Defendant has sufficient minimum contacts with this State and/or has sufficiently availed itself of the markets in this State to render the exercise of jurisdiction by this Court

5

permissible.

35.     Venue is proper in this District under 18 U.S.C. § 1391 (b) because a substantial part of the events giving rise to Plaintiff's claim occurred while he resided in this District.

## FACTUAL ALLEGATIONS

### A.      Plaintiff's Student Loan Servicing Experience

36.     Plaintiff has two federal loans that are currently serviced by MOHELA under account number 9250829902.

37.     Plaintiff has had federal student loans since approximately 2009.

38.     In approximately December 2021, Plaintiff was notified that his federal student loans would be transferred to MOHELA for servicing.   Prior to that time, his student loans had been serviced by Fedloan Servicing

39.     In approximately December 2021, Plaintiff received a welcome packet of documents and information from MOHELA regarding the servicing of his student loans.

40.     During the COVID Pandemic, Plaintiff's student loans were placed on an Administrative Forbearance by Presidential Executive Order ("COVID Forbearance").

41.     Plaintiff did not sign a contract or enter into any agreement with MOHELA when his student loans were transferred to MOHLEA for servicing.

42.     Plaintiff had no input or approval of the transfer to MOHELA.

43.     In September 2023, Plaintiff applied for an income-driven repayment (IDR) plan under the Saving on a Valuable Education (SAVE) plan.

44.     In September 2023, MOHELA notified Plaintiff that his account was placed on administrative forbearance. (See exhibit 1).

45.     In September 2023, Plaintiff called MOHELA regarding the IDR SAVE plan application, which MOHELA stated to Plaintiff that no new application was required since

Plaintiff's current plan prior to the COVID Forbearance was valid until his recertification in 2025 due to a recent President Biden executive order.

46.     During September 2023 call with MOHELA, MOHELA withdrew the new IDR SAVE plan application since Plaintiff's current plan was still valid.

47.     On November 7, 2023, MOHELA notified Plaintiff that an auto debit payment was scheduled for an amount of $826.23, to be withdrawn on or about December 2, 2023.

48.     Plaintiff's account was actually debited by MOHELA in the amount of $826.23 on November 30, 2023.

49.     Plaintiff's account was subsequently debited by MOHELA in the amount of $826.23 on December 31, 2023, on January 31, 2024, and on February 29, 2024.

50.     On March 30, 2024, Plaintiff received a letter from MOHELA that his loans had been placed on the SAVE IDR plan, which replaced the previous Revised Pay As You Earn (REPAYE) IDR plan.  It advised that his new monthly payment amount would be $1,801.89 and that the first payment would be debited on May 2, 2024.  (See exhibit 2)

51.     In April 2024, Plaintiff contacted MOHELA and advised that the change to the SAVE IDR plan was not authorized and that the new payment amount is not authorized.

52.     Nevertheless, despite numerous communications that the payment was not authorized, on April 30, 2024, MOHELA initiated a debit withdrawal from Plaintiff's bank account in the amount of $1,801.89.

53.     Despite Plaintiff's numerous complaints and requests to correct the auto debit amount, on June 4, 2024, MOHELA sent Plaintiff a Notice that an auto debit would be made on or about July 2, 2024, in the amount of $1,801.89.

54.     Nevertheless, despite numerous communications that the payment was not authorized, on or about July 2, 2024, MOHELA initiated a debit withdrawal from Plaintiff's bank

account in the amount of $1,801.89.

55.     Finally, on July 6, 2024, after numerous requests by Plaintiff to correct the payment amount, MOHELA sent a notice that the correct auto debit payment would be withdrawn on or about August 2, 2024, in the amount of $826.23.

**B.     Federal Student Loans Program**

56.     Congress enacted the Higher Education Act of 1965 ("HEA") to increase access to postsecondary educational opportunities by providing assistance in the form of grants and loans to students to attend colleges and universities.

57.     The HEA authorizes several different types of federal student loans, including loans guaranteed by the federal government.

58.     Since 2010, the federal government's primary student loan program has been the William D. Ford Direct Student Loan Program ("Direct Loan Program"), through which USED lends directly to borrowers and is the holder of the loans.

59.     On behalf of the federal government, MOHELA is responsible for sending monthly bills, processing monthly payments, and providing customer service to borrowers.

60.     MOHELA also receives and processes applications for repayment plans and loan discharge programs.

61.     Student loan servicers are generally borrowers' only official points of contact regarding their federal student loans.

62.     In 2020 and 2021, several student loan servicers chose not to renew their contracts with USED to service the federally held student loan portfolio.

63.     As a result, MOHELA's portfolio more than tripled in less than three years, growing from approximately 2.5 million borrowers in February 2020 to 8.4 million by the fall of 2023.

64. Despite the relatively low demands on servicers during the Payment Pause, borrowers seeking assistance from MOHELA experienced excessive call wait times and an inability to reach customer service representatives.

65. In May 2023, it was announced that the Payment Pause would officially end on September 1, 2023, at which point interest would begin to accrue again, with payments becoming due the following month.

66. On October 30, 2023, just thirty days after the first borrower payments were due, USED announced that MOHELA had "failed to meet its basic obligation by failing to send billing statements on time to 2.5 million borrowers" and that, as a result, over 800,000 borrowers were delinquent on their loans.

67. ED explained that MOHELA had also billed some borrowers for an incorrect amount and put other borrowers back into repayment who should have been in forbearance while debt relief applications were pending.

68. ED withheld $7.2 million in payments to MOHELA as a result of the company's servicing errors.

69. This penalty did not help the millions of borrowers whose loans MOHELA improperly serviced.

70. Instead, affected borrowers' accounts were placed into administrative forbearance while MOHELA took corrective action. This came as a surprise to many borrowers, and occurred without any meaningful explanation from MOHELA as to why borrowers were no longer being billed.

71. Other borrowers remained in repayment but believed that their bills contained errors and struggled to reach knowledgeable MOHELA representatives who could resolve their concerns.

72.     Of those who were billed, some borrowers' payments were made automatically via debit from their bank accounts.  When borrowers receive incorrect bills, this results in incorrect amounts being withdrawn from their bank accounts.

73.     For some borrowers, these automatic payments were unexpected, as they had never authorized MOHELA to debit their bank account.  In the lead-up to payments resuming, USED had instructed that for borrowers to utilize auto-pay, they would have to opt in and reauthorize the government and its servicers to debit their bank accounts, even if they had been enrolled in auto-pay before the payment pause went into effect.  Despite this instruction, some borrowers who had not opted back into auto-pay had their bank accounts debited by MOHELA to pay their student loans.

74.     As early as July 2023 and into December 2023, MOHELA instructed borrowers enrolled in an IDR plan to recertify their income and family size—often resulting in higher payments for borrowers.  MOHELA did this both by sending borrowers written notices instructing them to recertify and by orally advising borrowers who called for assistance to do so.

75.     As a result of MOHELA's improper instruction, borrowers recertified earlier than required.  Many borrowers' payments increased well before they should have, and MOHELA then collected these amounts during months when payments should have been lower.

76.     Further, as a result, MOHELA improperly debited borrowers' bank accounts with higher amounts than authorized.

77.     Despite this great and foreseeable need for customer assistance, in the months leading up to Return to Payment, borrowers reported hours-long wait times to speak with MOHELA customer service representatives to advise of problems, among other things incorrect payment amounts..

78.     Furthermore, MOHELA makes it practically impossible for borrowers to get help

with their loans. Instead of adequately staffing and appropriately training customer service representatives, MOHELA affirmatively took steps to make it harder for borrowers to receive help.

79.     This is especially frustrating for borrowers because in its written notices, MOHELA represents that borrowers can contact it for assistance. For example, in one of its recent notices to a borrower that her account was placed into administrative forbearance, MOHELA advertised its services by stating: "Difficulty Making Payments?  We can help.  Student loan counselors are available to discuss your repayment options including: Income-driven repayment plans, other repayment plans and schedules, [and] availability of consolidation, deferment, or forbearance."

80.     Although student loan servicers, including MOHELA, also offer electronic messaging platforms, borrowers fared no better there.  On X, formerly known as Twitter, one borrower shared that after sending a written message, MOHELA replied that it would respond within three days, but that he was still waiting for a reply three *weeks* later.

81.     Borrowers who did reach a customer service representative reported that these MOHELA employees lacked knowledge of the Waiver and/or Adjustment opportunities, seemed unfamiliar with the student loan system, and generally could not answer borrowers' questions.

82.     As outlined above, MOHELA's willful and continuing failure to allow borrowers access to properly trained customer service representatives has real-world consequences for borrowers.

83.     On April 29, 2024, USED announced that it would transfer over one million borrower accounts away from MOHELA to other student loan servicers.  USED explained that MOHELA requested the transfer and that the transfer was being done to "ensure borrowers receive the best service and support[.]"

84.     These announcements were made in swift succession and were made around the same time as MOHELA announced its servicing platform transition.

85.     Given that each of these two changes—accounts being moved from MOHELA to other servicers—involved a transfer or transition of some kind, they caused confusion for many borrowers.

86.     Borrowers have attempted to contact MOHELA but are met with the same unreasonably long call wait times that have persisted for over a year. Others have sought information online but cannot access their account or a clear and concise explanation.

87.     MOHELA's call deflection, understaffing, and poor training make it practically impossible for borrowers to speak with a live customer service representative who can give an individualized and accurate explanation of what is occurring.

88.     Instead, MOHELA has maintained and continues to maintain insufficient staff and fails to train them adequately on student loan servicing requirements and procedures.

89.     MOHELA fails to respond to borrower complaints adequately and to correct errors on borrowers' accounts. When borrowers are able to submit complaints or raise questions about their accounts, MOHELA fails to properly investigate and resolve them. When MOHELA discovers an error, it fails to conduct a proper root cause analysis to determine whether the issue is systemic and to correct it.

90.     MOHELA fails to meet its core responsibilities as a student loan servicer, such as accurately billing borrowers, processing IDR applications, processing valid refund requests, and ensuring access to account records.

91.     It also makes affirmative misrepresentations to borrowers about information that it knows or should know, including IDR Account Adjustment or instructing them to recertify their IDR plans too early.

92.     MOHELA, and all student loan servicers, are required by law to treat borrowers fairly. By engaging in call deflection and creating a customer service system that makes it practically

impossible for borrowers to seek assistance or, more concerningly, to have MOHELA's own errors corrected, the servicer has created a deeply unfair experience for

93.     MOHELA's servicing errors and call deflection tactics suggest a decision to maximize revenues rather than to invest in the staff and infrastructure necessary to service more than 8 million borrowers' loans.

94.     Unable to turn to MOHELA for help with their accounts or for reliable information about the changes to the student loan system, borrowers have suffered the consequences of MOHELA's failures.

## CLASS ALLEGATIONS

95.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

96.     Plaintiff asserts the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

97.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action as a class action, on behalf of the following classes (the "Class"):

Illinois Class: Each person who had a loan serviced by MOHELA during the Class Period in which MOHELA processed an unauthorized debit transaction or failed to properly process requests for IDR applications.

98.     The Class Period is defined as the limitations time period applicable under the claims to be certified.

99.     The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate

families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

100.    Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

101.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

102.    <u>Numerosity</u>: Thousands of consumers have been injured by Defendant's deceptive business practices, including Plaintiff. They all have been damaged by Defendant's unauthorized debit transactions and deceptive business practices.

103.    The class represented by Plaintiff have thousands of members and the joinder of all members is impracticable.

104.    <u>Typicality</u>: Plaintiff's story and his claims are typical for the class and, as the named Plaintiff, he is aware of other persons in the same situation. Plaintiff and the members of the Class sustained damages arising out of Defendant's illegal course of business.

105.    <u>Commonality:</u> Since MOHELA failed to properly process student loan payment and processed unauthorized debits from borrowers accounts the questions of law and fact are common to the class.

106.    <u>Adequacy</u>: Plaintiff Mermigas will fairly and adequately protect the interests of each class they represent.

107.    <u>Superiority</u>: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## **<u>CAUSES OF ACTION</u>**

## COUNT I – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND UNIFORM DECEPTIVE TRADE PRACTICES ACT

### (On behalf of Plaintiff and All Those Similarly Situated)

108.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

109.    Plaintiff brings this Count against MOHELA on behalf of himself and all those similarly situated, as defined above, pursuant to Fed. R. Civ. P. 23.

110.    The Illinois Consumer Fraud and Uniform Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, et seq., provides protection to consumers by mandating fair competition in commercial markets for goods and services.

111.    The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

112.    MOHELA's practices of failing to comply with its basic responsibilities as a student loan servicer are unfair and deceptive in violation of the ICFA.

113.    MOHELA violates the ICFA by processing unauthorized debit transactions from consumers bank accounts.

114.    MOHELA violates the ICFA by affirmatively misinforming Plaintiff and Class Members about the deadline to recertify their incomes, leading to confusion and to some members paying higher monthly payments than they owe.

115.    MOHELA further violates these provisions by deducting payments from Plaintiff and Class Members' bank accounts without their affirmative consent to do so.

116. MOHELA further violates these provisions by concocting a call deflection scheme to make it extremely difficult for Plaintiff and Class Members to contact MOHELA regarding loan servicing failures, and instead directing Plaintiff and Class Members to self-service options that are insufficient to meet their needs or are not functional.

117. MOHELA further violates these provisions by failing to adequately staff its call centers and by failing to adequately train its customer service representatives.

118. MOHELA further violates these provisions by failing to record accurately Plaintiff and Class Members' payments, refunds, and records.

119. MOHELA further violates these provisions by misinforming Plaintiff and Class Members about their payment options. Namely, MOHELA gives Plaintiff and Class Members incorrect information regarding their eligibility for certain programs and time-sensitive decisions to be made relating to their loans.

120. Upon information and belief, USED did not instruct MOHELA to engage in these acts.

121. These acts are unfair because they cause or are likely to cause substantial injury to borrowers, which the borrowers cannot reasonably avoid, and which is not outweighed by countervailing benefits to consumers or to competition.

122. These acts are also deceptive because they mislead or are likely to mislead borrowers, borrowers' interpretations of these misleading acts are reasonable, and the misleading acts are material.

## COUNT II – UNJUST ENRICHMENT

123. Plaintiff incorporates by reference paragraphs 1-107 of this Complaint as if fully rewritten herein. As set forth above, Plaintiff asserts this count on their own behalf and on behalf of all other similarly situated individuals.

124. With the unauthorized debits from their accounts, Plaintiffs and Class Members

16

conferred a direct benefit to MOHELA.

125.     Consumers that are members of the class continue to suffer injuries as a result of the MOHELA's actions. If the MOHELA does not compensate the Plaintiff and the Class Members, they would be unjustly enriched as a result of their unlawful act or practices.

126.     It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for MOHELA to retain said benefit, reap unjust enrichment.

127.     Since MOHELA unjustly enriched themselves at the expense of the Class Members, the Plaintiff requests the disgorgement of these ill-gotten money.

128.     Due to MOHELA's conduct, Plaintiffs and the Class Members are entitled to damages according to proof.

## COUNT III – NEGLIGENT MISREPRESENTATION

129.     Plaintiffs incorporate by reference all paragraphs 1-107 of this Complaint as if fully rewritten herein. As set forth above, the Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

130.     Defendant had a duty to provide accurate information to Plaintiff and the Class Members regarding their eligibility for certain programs and time-sensitive decisions to be made relating to their loans,

131.     When advising Plaintiff and Class Members about their payment options, MOHELA made representations that it knew to be false, or negligently failed to examine the veracity of the statements.

132.     MOHELA made representations regarding debit to Plaintiff's bank account that it knew to be false, or negligently failed to examine the veracity of the statements.

133.   As a result of Defendants' negligent misrepresentations, Plaintiff and the Class Members suffered injury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant and in favor of Plaintiff, and grant the following relief:

1. Certify and maintain this action as a class action, with the named Plaintiffs as designated class representatives and with their counsel appointed as class counsel;

2. A declaration that Defendant's conduct violates the Illinois Consumer Fraud Act;

3. Order the appropriate injunctive relief against Defendant to remedy the systemic deficiencies that have harmed Plaintiff, its members, and the general public;

4. Award punitive damages;

5. Award pre- and post-judgment interest;

6. Order the disgorgement of ill-gotten monies;

7. Additional relief as may be necessary to restore Plaintiff, Plaintiff's members and the general public to their rightful positions;

8. Award the named Plaintiff a service award;

9. Award Plaintiff's reasonable attorneys' fees and costs;

10. Any other relief which the court determines proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: November 7, 2024          Respectfully Submitted,

/s/ Keith L. Gibson
**Keith L. Gibson, Esq.**
**KEITH GIBSON LAW, P.C.**
586 Duane Street, Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Bogdan Enica, Esq. (*Pro Hac Vice* to be filed)
**KEITH GIBSON LAW, P.C.**
1200 N. Federal Highway, Suite 375
Boca Raton, FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

*Attorneys for the Plaintiff and the Putative Class*